THOMAS NESTER v. THE MICHIGAN LAND & IRON COM-
PANY.

*Contract—Mistake—Representations as to quantity and quality of
timber.*

1. The rule applied in the case in *Sherwood v. Walker,* 66 Mich. 568,
   is only applicable to the *precise* facts and circumstances of *that*
   case.
2. In this case the evidence is held to clearly show that, while
   defendant's agent stated to the complainant what estimates
   defendant had made of the pine sold for its own private purpose,
   he was informed that defendant would not sell promising the
   purchaser any such amount of timber, and that, if he purchased,
   it must be upon his own estimate, which he then had; and that
   defendant made no representation as to the amount of such tim-
   ber which it intended the complainant to, or which he did, rely
   upon.

Appeal from Wayne. (Look, J.)   Argued January 12,
1888.   Decided April 13, 1888.

Bill filed to compel the defendant to accept a portion of
the purchase price of timber sold complainant, on the ground
of mutual mistake in estimates, etc.   Defendant appeals.
Decree below reversed and bill dismissed.   The facts are
stated in the opinion.

*Isaac Marston (Benton Hanchett* and *John Atkinson,* of
counsel), for complainant.

*C. A. Kent (B. J. Stevens,* of counsel), for defendant.

SHERWOOD, C. J.   On the sixteenth of September, 1885,
the defendant entered into a written contract with the com-
plainant, whereby the defendant sold him all the merchantable

pine fit for saw logs on certain lands owned by the defendant, situate on sections 1, 3, 11, 14, and 15 in township 48 north, of range 32 west, in the county of Baraga, for the sum of $27,000, payable, one-quarter down, and the remainder in equal annual installments, with interest. By the terms of the contract, the timber was not to be cut faster than paid for.

The complainant, having made but one payment, without consent of defendant, cut and carried away to his mill all the pine upon the lands mentioned, and, in the month of March following, the defendant sued out of the circuit court of Baraga county a writ of replevin to seize the logs.

The bill in this case is filed to enjoin the prosecution of this suit, and to compel the defendant to accept about one-half of the purchase price for the timber sold, on the ground that both parties in their estimate of the quality of the timber standing upon the land when sold where mistaken, that a large portion of it was unsound, and that the yield of the quality sold furnished only about half the quantity anticipated or estimated, in consequence of the amount decayed.

The complainant avers that he purchased the pine relying on the representations of the defendant's agents who made the sale as to the quantity of the qualities mentioned in the contract; but that it turned out that such representations were not correct, although believed to be correct when made by the agents.

The complainant offers to have a decree rendered against him for such a sum as the court finds may be equitably due to the defendant upon the contract for the timber.

The decree of the court below is in favor of the complainant, and finds that he shall pay the defendant $12,798.48, instead of $27,000, as agreed upon in the contract, and less than half the sum the complainant agreed to pay. From this decree the defendant appeals to this Court.

The defendant, in its answer to the complainant's bill, says

it is a large owner of pine lands, which it holds for sale; that it has estimates of the timber on its lands, but it never represents or warrants these estimates to. be correct; that the complainant has long been an extensive lumberman and purchaser of pine lands; that on August 14, 1883, the defendant gave complainant an option to purchase within 60 days a large amount of pine lands, including those described in the contract, for $172,146; and at the same time the complainant was given a letter containing the following, in regard to the pine on said lands:

"There is a large amount of pine on these lands. The lowest estimate on any one section. is 90 M. feet; and the largest, over four million feet. The others are between these figures; but for the most part are nearer the latter than the former. Sections 1, 11, and 14, in 48–32; sections 23, 33, 35, in 49–32; and section 19, town 50–33,—are among the best."

That this is the only statement made as to said pine, and was based, as complainant well knew, on the estimates received by the defendant from its agents for its own use; that defendant's agents then believed, and still believe, that such estimate was a fair one; that it was not expected that complainant would buy relying on such estimate, and he did not thus buy; that such option expired without action by complainant.

Defendant further says, in its answer, that early in 1884, and in the month of February, another option was given complainant for the purchase of the lands afterwards bought, and other lands, for 60 days, for the sum of $87,486; and that, soon after, complainant caused said lands to be examined by his own agents, and they showed their estimates to the defendant's officers; that he claimed at that time that the pine was defective, and that the price should be reduced in consequence, and also proposed to have the lands examined by the agents of both parties, and that he be allowed to purchase by the thousand the merchantable pine found on the

land; that this offer was refused by the defendant; that he had the option to purchase the last-named lands, within 60 days, for the sum of $80,981.25, but this offer was not accepted.

That in December, 1884, complainant was given an option to buy the pine on the lands in question within 30 days for $35,000, and on January 12 thereafter he offered $22,000; that on February 7, 1885, the same pine was offered to complainant for $27,000; that complainant replied to this last proposition that the price was too high, or that in substance; that the defendant declined to take less; that complainant then made an offer of $24,000, which was refused; that finally, complainant, fearing the purchase by another, accepted the defendant's last offer, and on the sixteenth day of September thereafter the contract was completed, and put in writing, and $6,750 was paid thereon by the complainant.

And the answer, continuing, further says and avers that—

"Complainant acted, and proposed to act, during the whole of said negotiations, on information derived from his own agents, and understood perfectly that in buying said pine he took the risk of quality and quantity. The steps provided in said contract for giving complainant the right to cut and take away a portion of said pine, corresponding to the amount paid, have not been taken, and, in consequence, all of the cutting and carrying away of such pine has been unlawful, and the title of the same remains in defendant. Defendant claims that it has a perfect right to prosecute said replevin suit. It asks that the injunction forbidding this be dissolved. It asks, also, that it recover its costs in this suit, and for such other relief as may be agreeable to equity."

Such is the substance of the answer affecting the principal question upon which the decision in the case must turn, and it is in the main supported by the testimony, so far as it relates to statements of fact.

It appears from the testimony that Seymour, Stevens, and Midlam, acted as the defendant's agents. The complainant acted for himself in making the contract. It further appears

that the prices of the defendant's pine timber were determined by the company, and that the agents had no discretion to vary from those prices; also that the complainant had dealings with the defendant in the purchase of timber to the amount of $260,000 and over, previous to buying the timber in question; and that the complainant was told when he was treating for the timber in question, in substance, that the company did not wish to give him the estimates it made of the timber for its private use, and did not expect the purchaser to act upon it, but upon his own estimates, in making purchases; that Mr. Seymour acted mostly for the company in making this sale to the complainant; that Mr. Stevens was manager, and that he and Mr. Fairchilds, who was "chairman" of the company, fixed the prices of the timber.

That it was against the rules of the company to disclose the company's estimates of timber, to purchasers; and that the complainant knew this fact, and was told by Mr. Seymour that the company would neither sell its timber by the thousand feet, nor would it give any estimates or statements of the amount of timber any particular tract contained, for the reason—

" That, in the event of there not being as much pine actually upon the lands as the estimates show, a person purchasing could not say that we had guaranteed that there was so much pine, and the pine was not there."

It further appears from the testimony that the complainant applied to Mr. Seymour five or six times for a statement of the company's estimate upon the lands in question, and that he received the answer above stated each time, and finally urged the propriety of Mr. Seymour giving him the company's estimate, promising that he would not seek to hold the company liable for such statement or estimate; that Mr. Seymour then informed him that he must get the information of the quantity and qualities of the timber from his own estimates; and that complainant did have such estimates.

made by a man in his service, and who had been engaged in the business, more or less, for over 25 years; that no one pretends, if the timber had been sound, but that the amount would have filled the estimate of either party.

That all the means of ascertaining its soundness were equally accessible to both parties, and that each did what they saw fit to test the quality before concluding the contract, and that it was equally impossible to ascertain the extent of the defective timber until it was actually cut, and that each had reason to believe, and did believe, that it was defective, and the defendant refused to sell to the complainant except as it stood.

That the complainant was a lumberman with 25 years' experience in the various branches of the business, and was not unfamiliar with the region and timber where the pine in question grew.

It further appears that, when the parties came to make their contract, it was drafted by no novice in the business. It is full in its provisions, but it contains nothing that can be construed into a promise or guaranty as to the quantity or quality of timber or logs the tract sold to complainant should contain. The significance of this fact is of first importance, and can be neither overlooked nor misunderstood. Especially is this so, when it is considered that the parties had the matter under consideration for three months before the purchase was made, and that the principal question of contention during all that time was the amount of timber, of the quality desired, which the tract offered would be likely to yield. It is this important portion of the agreement between the parties—one of more consequence than any other contained in the contract—which the complainant claims was allowed to rest in parol, and which he now asks this Court, under the foregoing facts as we find them, to have interpolated into the contract.

We know of no rule in equity which will permit this to be

done. I hardly think counsel for complainant would think it equitable or just, if, when the timber was cut, it had been found to contain twice the number of feet either party had estimated, that the complainant should be held to pay defendant $54,000, instead of $27,000 as promised. Yet, if the doctrine they base their present claim upon is correct, there is no reason, why, under such circumstances, the complainant should not be held to pay that amount. We know of no case which will sustain the complainant's case upon the facts before us. That of *Sherwood v. Walker*, 66 Mich. 568 (33 N. W. Rep. 919), will come the nearest to it of any referred to. That is, however, somewhat different upon its facts, and the rule applied in that case can never be resorted to except in a case where all the facts and circumstances are precisely the same as in that.

It is a little difficult to see upon what evidence the circuit judge found that "the price agreed upon was fixed upon a basis of $4.00 per thousand," so long as Mr. Seymour testified that it was against the rules of the company to sell the pine in that way; that he had no authority to sell it by the thousand; that he so told the complainant; that he did not make the sale in that way—and his evidence upon that subject is undisputed.

We think the evidence clearly shows in this case that, while Seymour stated to the complainant what the estimates were which the company had made of the pine for its own private purposes, he told the complainant the company would not sell promising to the purchaser any such amount, and that the complainant must purchase, if at all, upon his own estimate; that he had such estimate made by his own men; that he knew the estimate could not be made with any degree of certainty by any one,—to use the language of his own estimate, that "it is all guess-work any way;" that the company made no representation to the complainant as to the amount of timber of the quality sold, which they intended Mr. Nester

to rely upon, or which Mr. Nester did rely upon, in making his purchase, but that he made the purchase upon his own estimate, or that of his men, as to such quantity; and that to hold otherwise would be making a new contract for the parties, instead of enforcing the one made by themselves.

We therefore think the decree at the circuit should be reversed, and bill dismissed, with costs of both courts.

CHAMPLIN and LONG, JJ., concurred.  MORSE, J., did not sit.